**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **JOHN DOE,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:26-cv-7826** |
| | § | |
| **SOMASEKHAR "SOMA" TATA;** | § | |
| **MAHESH TATA;** | § | |
| **ANURADHA ARCOT CHELVARAJ;** | § | |
| **MUHAMMAD LAKHANI;** | § | |
| **NADIR WALIYANI;** | § | |
| **ROSHAN ALY SATANI;** | § | |
| **AADIT FUELS, INC. d/b/a DJ FOOD** | § | |
| **MART;** | § | |
| **AADIT PETROTECH LLC d/b/a** | § | |
| **ALLIGATOR EXPRESS;** | § | |
| **A2S PETROTECH, LLC d/b/a SUPER** | § | |
| **STOP;** | § | |
| **AADI, INC. d/b/a TRI-STOP;** | § | |
| **LTW GROUP, INC. d/b/a RACEWAY** | § | |
| **#6768;** | § | |
| **AADI FUELS LLC d/b/a FALCON** | § | |
| **GROCERY; AND** | § | |
| **SATANI REHANA LLC;** | § | |
| **TEXAN TRIANGLE, LLC,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | **JURY TRIAL DEMANDED** |

**PLAINTIFF'S ORIGINAL COMPLAINT**
**(JURY TRIAL DEMANDED)**

# TABLE OF CONTENTS

Contents


TABLE OF CONTENTS ..... iii

EXECUTIVE SUMMARY — STRUCTURAL CONDITIONS AND CHRONOLOGY OF EXPLOITATION ..... 1

***Industry Context: The Vulnerability of H-1B Workers Whose Status Depends on a Single Employer*** ..... 1

***The Family Relationship as the Instrument of Control*** ..... 2

***Coercive Mechanisms and Chronology*** ..... 2

***Retaliation Upon Escape*** ..... 3

PART I — OVERALL NATURE OF CLAIMS ..... 3

PART II — PARTIES ..... 3

***A. Plaintiff*** ..... 3

***B. Individual Defendants*** ..... 4

***C. Entity Defendants*** ..... 6

PART III — JURISDICTION AND VENUE ..... 9

PART IV — LIMITATIONS AND CONDITIONS PRECEDENT ..... 9

PART V — FACTUAL ALLEGATIONS ..... 10

***A. Plaintiff's Position Before 2017*** ..... 10

***B. The October 2017 Promise and the Written Employment Contract*** ..... 10

***C. The Store Locations at Which Plaintiff Performed Labor*** ..... 11

***D. Seizure of Plaintiff's Passport and Threat of Immigration Enforcement*** ..... 12

***E. Cash Underpayment and the Absence of Any Payroll Record*** ..... 12

***F. Coerced Participation in Unlawful Activity*** ..... 13

***G. The May 2022 Medical Emergency, the Engineered Check, and the Arrest Threat*** ..... 13

***H. Escape and Retaliation*** ..... 14

***I. The Federal Trafficking Determination*** ..... 14

***J. Injury*** ..... 15

PART VI — CAUSES OF ACTION ..... 15

COUNT ONE — FORCED LABOR ..... 15

COUNT TWO — FORCED LABOR: BENEFICIARY LIABILITY ..... 16

COUNT THREE — TRAFFICKING WITH RESPECT TO FORCED LABOR ..... 18

COUNT FOUR — UNLAWFUL CONDUCT WITH RESPECT TO DOCUMENTS ..... 19

COUNT FIVE — CONSPIRACY AND ATTEMPT ..... 20

COUNT SIX — TEXAS LABOR TRAFFICKING ..... 20

COUNT SEVEN — BREACH OF CONTRACT ........ 22
COUNT EIGHT — FRAUD AND FRAUDULENT INDUCEMENT ........ 22
COUNT NINE — QUANTUM MERUIT AND UNJUST ENRICHMENT ........ 23
COUNT TEN — SINGLE BUSINESS ENTERPRISE, ALTER EGO, AND VICE-PRINCIPAL LIABILITY ........ 24
COUNT ELEVEN — NEGLIGENCE ........ 24
COUNT TWELVE — GROSS NEGLIGENCE ........ 25
COUNT THIRTEEN — EXEMPLARY AND PUNITIVE DAMAGES ........ 26
COUNT FOURTEEN — PRINCIPAL – AGENT LIABILITY – PIERCING THE CORPORATE VEIL ........ 26
COUNT FIFTEEN — PRINCIPAL – AGENT LIABILITY – VICE PRINCIPAL ........ 27
COUNT SIXTEEN — ATTORNEY’S FEES ........ 27
PART VII - PLAINTIFF’S STATEMENT OF DISAFFIRMANCE ........ 28
PART VIII — PRESERVATION OF EVIDENCE ........ 28
PART IX — JURY DEMAND ........ 29
PART X — PRAYER FOR RELIEF ........ 29

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff JOHN DOE ("Plaintiff"), by and through his undersigned counsel, and files this **Plaintiff's Original Complaint** against Defendants SOMASEKHAR "SOMA" TATA ("Soma"), MAHESH TATA ("Mahesh"), ANURADHA ARCOT CHELVARAJ a/k/a ANURADHA ARCOT-CHELVARAJ ("Anuradha"), MUHAMMAD AMIN LAKHANI a/k/a MOHAMMED AMIN LAKHANI and "AMEEN" ("Lakhani"), NADIR WALIYANI ("Waliyani"), and ROSHAN ALY SATANI ("Ali") SATANI REHANA LLC, TEXAN TRIANGLE, LLC (collectively, the "Individual Defendants"), together with AADIT FUELS, INC. d/b/a DJ FOOD MART; AADIT PETROTECH LLC d/b/a ALLIGATOR EXPRESS; A2S PETROTECH, LLC d/b/a SUPER STOP; AADI, INC. d/b/a TRI-STOP; LTW GROUP, INC. d/b/a RACEWAY #6768; AADI FUELS LLC d/b/a FALCON GROCERY; (collectively, the "Tata Entities") (together with the Individual Defendants and the Tata Entities, the "Defendants"), and in support thereof respectfully shows the Court as follows:

## EXECUTIVE SUMMARY — STRUCTURAL CONDITIONS AND CHRONOLOGY OF EXPLOITATION

### *Industry Context: The Vulnerability of H-1B Workers Whose Status Depends on a Single Employer*

1. A foreign national working in the United States on an H-1B visa occupies one of the most structurally precarious positions in the American labor market. The visa is petitioned for, held, and controlled by the employer. A worker who loses the sponsoring employer loses, within a short grace period, the legal right to remain in the country. A worker whose promised transfer petition is never filed has no status at all — and no way to obtain status except through the very person who withheld it. [1]

2. That dependency is not incidental to the exploitation alleged here. It is the mechanism of it. Plaintiff's prior H-1B sponsor ran out of work for him in 2017. Soma Tata — his own cousin — promised to transfer the visa and to employ him lawfully. The transfer was never filed. What followed was not a wage

[1] Congressional Research Service, "U.S. Employment-Based Immigration Policy," R47164 (updated 2024) (noting that prospective EB immigrants who must remain with the same employer sponsor "are susceptible to labor market exploitation"). Available at https://crsreports.congress.gov/product/pdf/R/R47164.Economic Policy Institute, "EPI Comments on DHS's 'Modernizing H-1B' Proposed Rule" (2024) ("The H-1B visa itself is owned and controlled by the employer … This arrangement results in a form of indentured servitude."). Available at https://www.epi.org/publication/epi-comments-on-dhss-modernizing-h-1b-proposed-rule/

dispute. It was approximately six years of labor obtained by a person who controlled whether Plaintiff could lawfully remain in the United States, who physically held his passport, and who told him repeatedly that a complaint or a departure would end in a report to immigration authorities or in his arrest.

3. The federal government has already examined this conduct and reached a conclusion about it. On January 9, 2023, the United States Department of Homeland Security approved Plaintiff's application for T nonimmigrant status relief available by statute only to victims of a severe form of trafficking in persons who satisfy the statute's other requirements, including cooperation with reasonable requests for assistance from law enforcement or a qualifying exception.

***The Family Relationship as the Instrument of Control***

4. Soma Tata is Plaintiff's cousin. The exploitation alleged in this Complaint did not begin with a stranger's cold recruitment. It began with a family member's promise to take care of a relative that was in immediate immigration distress. This family relationship made the initial trust possible, made surrendering the passport to the family member seem reasonable, and made escaping harder because the Plaintiff would not only lose income and immigration status but would cause a ruptured family in two continents. When Plaintiff finally left, the retaliation ran through exactly that channel: a public accusation of theft circulated to his former classmates and, through relatives, to his mother and sister in India.

***Coercive Mechanisms and Chronology***

5. The coercive architecture alleged here had six components, each of which is pleaded in detail below: (i) a false promise of lawful H-1B employment that induced Plaintiff to place his labor and his status in Soma's hands; (ii) the taking and prolonged retention of his passport, including for approximately twenty-five months after it had expired; (iii) cash-only underpayment that left no payroll record, no withholding, and no independent proof of the employment relationship; (iv) repeated threats to report Plaintiff to immigration authorities or to have him arrested; (v) the direction of Plaintiff into unlawful activity conducted through the stores, followed by the assertion that his participation was itself a crime for which Soma could report him; and (vi) the denial of leave during a family medical emergency, followed by an engineered "check fraud" episode used as a threat to compel his return to work.

6. Each mechanism served the same function. Each gave Soma an additional reason Plaintiff could not safely leave. Taken together they constituted a scheme, plan, and pattern intended to cause Plaintiff to believe that if he did not continue to perform labor he would suffer serious harm — the elements of forced labor under 18 U.S.C. § 1589(a).

### *Retaliation Upon Escape*

7. Plaintiff left Soma's employ on or about July 8, 2023. Six days later, on or about July 14, 2023, Mahesh Tata published a Facebook post falsely stating that Plaintiff had "looted $500,000 and keys" from the store, naming him and using his photograph. The post was circulated to Plaintiff's former classmates and, through relatives, to his mother and sister in India. Soma separately threatened that if Plaintiff did not return, Soma would report that Plaintiff had stolen $500,000 and have him imprisoned. The accusation was false. Its timing within a week of Plaintiff's escape and its content establish it as retaliation for, and an attempt to discredit, Plaintiff's report of the trafficking.

## PART I — OVERALL NATURE OF CLAIMS

8. This case is about the use of a person's immigration status, his passport, and his family ties as instruments to obtain his labor for approximately six years at a fraction of its value.

9. Before 2017, Plaintiff was a senior SAP business-intelligence consultant working abroad and earning the equivalent of approximately $95,000 per year. Between approximately December 2017 and July 8, 2023, he worked in Soma Tata's gas stations and convenience stores in cash, at a rate of approximately $10 to $13 per hour, for roughly ten to twelve hours per day, seven days per week (later six), with no holidays, no vacation, and no sick leave. His contemporaneous records reflect more than 2,700 hours of uncompensated overtime. He is today earning approximately $31,200 per year.

10. Plaintiff does not plead a wage-and-hour case. He pleads a trafficking case. The unpaid and suppressed compensation is a measure of the damages caused by the forced labor, recoverable as actual damages under 18 U.S.C. § 1595 and Texas Civil Practice and Remedies Code Chapter 98 — not as a claim under the Fair Labor Standards Act, which is not asserted here.

11. Plaintiff brings this action on his own behalf only. He does not assert, in this Complaint, claims belonging to his wife or his children.

## PART II — PARTIES

### *A. Plaintiff*

12. Plaintiff is an individual residing in Fort Bend County, Texas. He is a 44-year-old SAP business-intelligence consultant and a native of India. On January 9, 2023, the United States Department of Homeland Security approved his application for T nonimmigrant status as a victim of a severe form of trafficking in persons.

### *B. Individual Defendants*

13. Defendant Somasekhar "Soma" Tata (also known as "Tata Somasekhar") is an individual who, on information and belief, resides in Baytown, Texas, and is Plaintiff's cousin. At all relevant times, Soma owned, controlled, or operated, individually or together with others, a group of Texas gas-station and convenience-store businesses, including the three stores at which Plaintiff performed labor: (1) the Raceway gas station at 3108 Palmer Highway, Texas City, Galveston County, Texas 77590 (the "Raceway Location"); (2) the Valero Tri-Stop at 1800 Massey Tompkins Road, Baytown, Harris County, Texas 77521 (the "Tri-Stop Location"); and (3) DJ Food Mart (Exxon) at 7317 State Highway 61, Hankamer, Chambers County, Texas 77560 (the "DJ Food Mart Location").

14. Soma also owned or controlled Super Stop at 5003 N. Main Street, Baytown, Harris County, Texas 77521, and the additional store locations identified below. According to records of the Texas Comptroller of Public Accounts, Soma is the registered agent and a member of Defendant Aadit Petrotech LLC, and the registered agent, a director, and a member of Defendant A2S Petrotech, LLC. On information and belief, public business records also associate Soma with Defendants Aadi, Inc., Aadit Fuels, Inc., Aadi Fuels LLC, and LTW Group, Inc. Soma personally directed Plaintiff's labor, personally set and paid his compensation in cash, personally took and retained Plaintiff's passport, and personally made the threats alleged herein. Soma may be served at 5003 N. Main Street, Baytown, Texas 77521, or at 2526 Mission Viejo Street, Baytown, Harris County, Texas 77521 (the registered office of Aadit Petrotech LLC), or wherever he may be found.

15. Defendant Mahesh Tata is an individual who, on information and belief, resides in Texas, and is the brother of Soma Tata. Mahesh participated in the venture alleged herein, benefited from Plaintiff's labor, and published the retaliatory statements described below. On or about July 14, 2023, six days after Plaintiff left Soma's employ, Mahesh published a Facebook post falsely stating that Plaintiff had "looted $500,000 and keys" from the store. The post named Plaintiff, used his photograph, and was circulated to Plaintiff's former classmates and, through relatives, to Plaintiff's mother and sister in India. Mahesh's accusation matched the threat Soma was making at the same time, that Soma would report Plaintiff for stealing $500,000 and have him imprisoned unless Plaintiff returned to work. Mahesh and Soma together carried out the retaliation that followed Plaintiff's escape. Mahesh may be served wherever he may be found.

16. Defendant Anuradha Arcot Chelvaraj (also known as "Anuradha Arcot-Chelvaraj" and "Anuradha Tata") is an individual who, on information and belief, resides in Texas, and is the wife of Soma Tata. On information and belief, Anuradha is the registered agent, president, and director of Aadya

Fuels, Inc., which was formed on October 9, 2024, and which since October 16, 2024, has held the Texas sales-tax permit for "Super Stop #25" at 5003 N. Main Street, Baytown, Texas 77521, the same address used by Defendants A2S Petrotech, LLC and Aadit Petrotech LLC. On information and belief, Anuradha has also been associated with Anudit Petroleum, LLC. On information and belief, as Soma's wife, Anuradha shared in the income that Soma's store businesses generated while Plaintiff worked for them, including the value of the labor for which Plaintiff was never fairly paid. Anuradha participated in the venture alleged herein and knowingly benefited from Plaintiff's labor. Anuradha may be served at her business address, 5003 N. Main Street, Baytown, Harris County, Texas 77521, or wherever she may be found.

17. Defendant Muhammad Amin Lakhani (also known as "Mohammed Amin Lakhani," "Mohammed Lakhani," and "Ameen") ("Lakhani") is an individual believed to reside in Texas. On information and belief, Lakhani was Soma Tata's business partner at the Raceway Location, 3108 Palmer Highway, Texas City, Galveston County, Texas 77590, and held the lease for that location with Soma Tata and Defendant Nadir Waliyani. Lakhani is associated with Defendant LTW Group, Inc., the entity that operated the Raceway Location. Plaintiff performed labor at the Raceway Location from approximately December 2017 through December 2018. Lakhani knowingly participated in, and knowingly benefited from, the venture alleged herein with respect to that location, and knew or should have known of the conduct alleged herein. Lakhani may be served at his last known business address, 3108 Palmer Highway, Texas City, Galveston County, Texas 77590, or wherever he may be found.

18. Defendant Nadir Waliyani ("Waliyani") is an individual believed to reside in Texas. On information and belief, Waliyani held the lease for the Raceway Location with Soma Tata and Lakhani and participated in its operation, and he is associated with Defendant LTW Group, Inc., the entity that operated the Raceway Location. Plaintiff performed labor at the Raceway Location from approximately December 2017 through December 2018. Waliyani knowingly participated in, and knowingly benefited from, the venture alleged herein with respect to that location, and knew or should have known of the conduct alleged herein. Waliyani may be served at his last known address, 10305 Lands End Drive, Houston, Harris County, Texas 77099, or wherever he may be found.

19. Defendant Roshan Aly Satani ("Roshan Aly") is an individual believed to reside in or about Baytown, Harris County, Texas. On information and belief, Roshan Aly is the person from whom Soma Tata leased the Tri-Stop Location, 1800 Massey Tompkins Road, Baytown, Harris County, Texas 77521, where Plaintiff performed labor from approximately December 2018 through November 2019. On information and belief, Roshan Aly owned, held an interest

in, or controlled that property, and the lease of that property to Soma Tata or Defendant Aadi, Inc., either individually or through one or more entities, including Defendant Satani Rehana LLC, which public property records identify as the owner of record, and Defendant Texan Triangle, LLC. These allegations are pleaded in the alternative. Roshan Aly knowingly benefited, including by receiving rent, from participation in the venture alleged herein with respect to the Tri-Stop Location, and knew or should have known of the conduct alleged herein. Roshan Aly may be served at his last known address or wherever he may be found.

***C. Entity Defendants***

20. Defendant AADIT FUELS, INC. d/b/a DJ FOOD MART ("Aadit Fuels") is a Texas corporation with its principal place of business at 7317 State Highway 61, Hankamer, Chambers County, Texas 77560, doing business as DJ Food Mart (Exxon). Aadit Fuels is the owner of record of the real property on which DJ Food Mart operates (Chambers County Appraisal District Parcel Nos. 21210 and 44748), which it acquired from Kashka Incorporated by warranty deed with vendor's lien dated on or about November 1, 2018 (Chambers County Instrument No. 137169). The Chambers County Appraisal District carries DJ Food Mart's business personal property account (Parcel No. 53919) in care of Aadit Fuels. It may be served through its registered agent. On information and belief, at all relevant times it was owned and controlled by Soma Tata and knowingly benefited from Plaintiff's labor, which Plaintiff performed at that location from approximately November 2019 through July 8, 2023.

21. Defendant AADI, INC. d/b/a TRI-STOP is a Texas corporation and, on information and belief, the entity through which Soma Tata operated the Valero Tri-Stop at the Tri-Stop Location, 1800 Massey Tompkins Road, Baytown, Harris County, Texas 77521, on premises leased from Defendant Satani Rehana LLC, Defendant Roshan Aly Satani, Defendant Texan Triangle, LLC, or some combination of them. It may be served through its registered agent. On information and belief, at all relevant times it was owned and controlled by Soma Tata and knowingly benefited from Plaintiff's labor, which Plaintiff performed at that location from approximately December 2018 through November 2019.

22. Defendant AADIT PETROTECH LLC d/b/a ALLIGATOR EXPRESS ("Aadit Petrotech") is a Texas limited liability company (Texas Secretary of State File No. 0801779591), formed on May 6, 2013, that uses 5003 N. Main Street, Baytown, Harris County, Texas 77521, as its mailing address. On information and belief, Aadit Petrotech does business as Alligator Express, a store also referred to as Chevron Anahuac / Alligator Express, at 139 S. Ross Sterling Avenue, Anahuac, Chambers County, Texas 77514. On information and belief, Aadit Petrotech is the entity through which Soma Tata contracted for Plaintiff's services beginning in or about October 2017. It may be served

through its registered agent, Somasekhar Tata, at its registered office, 2526 Mission Viejo Street, Baytown, Harris County, Texas 77521. At all relevant times it was owned, controlled, and managed by Soma Tata, who is its registered agent, its member, and its vice-principal. Aadit Petrotech knowingly benefited from Plaintiff's labor and is liable for the acts and omissions of Soma Tata under principles of agency, respondeat superior, alter ego, and vice-principal liability, and as a knowing beneficiary of the venture under 18 U.S.C. §§ 1589(b) and 1595(a) and Texas Civil Practice and Remedies Code § 98.002.

23. Defendant A2S PETROTECH, LLC d/b/a SUPER STOP ("A2S Petrotech") is a Texas limited liability company formed on February 11, 2014, doing business as Super Stop at 5003 N. Main Street, Baytown, Harris County, Texas 77521. A2S Petrotech has held the Texas sales-tax permit for Super Stop at that address since March 1, 2014, including throughout the period from December 2017 through July 2023. According to its most recent Public Information Report, Somasekhar Tata is a director and member of A2S Petrotech. It may be served through its registered agent, Somasekhar Tata, at its registered office, 5003 N. Main Street, Baytown, Harris County, Texas 77521. On information and belief, at all relevant times A2S Petrotech was owned and controlled by Soma Tata and, as a participant in the venture described below, knowingly benefited from Plaintiff's labor.

24. Defendant AADI FUELS LLC d/b/a FALCON GROCERY is a Texas limited liability company. On information and belief owned and controlled by Soma Tata, with its principal place of business at 406 S. Ross Sterling Avenue, Anahuac, Chambers County, Texas 77514, doing business as Falcon Grocery (Citgo-Conoco). Aadi Fuels LLC holds the Texas Alcoholic Beverage Commission permit for that store. On information and belief, as a participant in the venture described below, it knowingly benefited from Plaintiff's labor. It may be served through its registered agent as identified in the records of the Texas Secretary of State.

25. Defendant AADIT INVESTMENT INC d/b/a FRESNO GROCERY ("Aadit Investment") is a Texas for-profit corporation with its principal office at 3503 FM 521, Fresno, Fort Bend County, Texas 77545. Aadit Investment filed an assumed name certificate with the County Clerk of Fort Bend County, Texas (Instrument No. 2019090365), stating that it conducts business under the assumed name "Fresno Grocery" at 3503 FM 521, Fresno, Texas 77545, for a period of ten years and in all counties of this state. Defendant Somasekhar "Soma" Tata signed and acknowledged that certificate on behalf of Aadit Investment. On information and belief, Aadit Investment is owned and controlled by Soma Tata. On information and belief, the store at that address has also operated under the trade name "Renfrow Grocery." On information and belief, as a participant in the venture described below, it knowingly benefited from Plaintiff's labor. It may be served through its registered agent

as identified in the records of the Texas Secretary of State, or at its principal office, 3503 FM 521, Fresno, Fort Bend County, Texas 77545.

26. Defendant LTW GROUP, INC. d/b/a RACEWAY #6768 is a Texas corporation and, on information and belief, the entity through which Soma Tata, Lakhani, and Waliyani operated the Raceway Location at 3108 Palmer Highway, Texas City, Galveston County, Texas 77590, at which Plaintiff performed labor from approximately December 2017 through December 2018, at the outset of the relationship. On information and belief, that location was held under lease by Soma Tata, Lakhani, and Waliyani from another business or Defendant Raceway, that was aware or should have been aware of such circumstances. Texas Lottery Commission retailer records identify the licensed lottery retailer at 3108 Palmer Highway, Texas City, Texas 77590 as "Raceway #6768." It may be served through its registered agent as identified in the records of the Texas Secretary of State.

27. Defendant Raceway is the person or entity that owned the real property at the Raceway Location, 3108 Palmer Highway, Texas City, Galveston County, Texas 77590, from December 2017 through December 2018, and that leased that property to Soma Tata, Lakhani, and Waliyani. On information and belief, it knowingly benefited, including by receiving rent, from participation in the venture alleged herein with respect to that location, and knew or should have known of the conduct alleged herein. It may be served through its registered agent.

28. Defendant SATANI REHANA LLC is a Texas limited liability company that public property records identify as the owner of the real property at the Tri-Stop Location, 1800 Massey Tompkins Road, Baytown, Harris County, Texas 77521. On information and belief, Satani Rehana LLC owned that property from December 2018 through November 2019 and leased it to Soma Tata or Aadi, Inc. On information and belief, Satani Rehana LLC is the entity through which Defendant Roshan Aly Satani held or leased that property, or is otherwise associated with him. On information and belief, it knowingly benefited, including by receiving rent, from participation in the venture alleged herein with respect to that location, and knew or should have known of the conduct alleged herein. It may be served through its registered agent.

29. Defendant TEXAN TRIANGLE, LLC is a Texas limited liability company that, on information and belief, is associated with Defendant Roshan Aly Satani and with the ownership, holding, or leasing of the real property at the Tri-Stop Location, 1800 Massey Tompkins Road, Baytown, Harris County, Texas 77521, during the period from December 2018 through November 2019. On information and belief, it knowingly benefited, including by receiving rent, from participation in the venture alleged herein with respect to that location, and knew or should have known of the conduct alleged herein. It may be served through its registered agent.

30. Defendants Satani Rehana LLC, Texan Triangle, LLC, Roshan Aly Satani, and Aadit Fuels are referred to collectively as the "Premises Owner Defendants."

31. The Tata Entities and Defendants Soma, Mahesh, and Anuradha shared common ownership, common control, common management, commingled funds and personnel, and operated as an integrated enterprise and, in the alternative, as a single business enterprise. Plaintiff's labor was moved among the Raceway, Tri-Stop, and DJ Food Mart Locations at Soma's direction and for the benefit of the group as a whole, without separate employment agreements, separate payroll, or separate compensation from any entity.

## PART III — JURISDICTION AND VENUE

32. This Court has federal question jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States, including the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. §§ 1589, 1590, 1592, 1594, and 1595.

33. This Court has supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367(a) because those claims arise from the same case or controversy — the same course of conduct by the same Defendants — as the federal claims.

34. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (b)(2) because one or more Defendants reside in this District, all Defendants are residents of the State of Texas, and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District, including in Galveston County (the Raceway Location), Harris County (the Tri-Stop Location), and Chambers County (the DJ Food Mart Location), Texas.

35. This Court has personal jurisdiction over each Defendant. On information and belief, each Individual Defendant resides in Texas, and each entity Defendant is organized under Texas law or maintains its principal place of business in Texas. Each Defendant's conduct giving rise to Plaintiff's claims occurred in Texas.

36. This Court is empowered to grant declaratory relief under 28 U.S.C. §§ 2201–2202.

## PART IV — LIMITATIONS AND CONDITIONS PRECEDENT

37. Plaintiff's claims under 18 U.S.C. § 1595 are timely. Section 1595(c) provides that a civil action under that section may be brought not later than ten years after the cause of action arose. The conduct pleaded here occurred between approximately October 2017 and July 2023. Every federal claim asserted in this Complaint falls within that ten-year period.

38. Plaintiff's claim under Texas Civil Practice and Remedies Code Chapter 98 is timely as to conduct occurring within the limitations period established by Texas Civil Practice and Remedies Code § 16.0045. Plaintiff pleads his Chapter 98 claim as to conduct within that period and does not seek, under Chapter 98, recovery for conduct falling outside it. Plaintiff's recovery for the earlier conduct is sought under 18 U.S.C. § 1595.

39. To the extent any Defendant asserts limitations as to any state-law claim, Plaintiff pleads the discovery rule, fraudulent concealment, and equitable tolling. Soma affirmatively concealed the non-filing of the H-1B transfer petition, misrepresented the status of Plaintiff's immigration matters, retained Plaintiff's passport so that Plaintiff could not independently verify his own status, and used threats of immigration enforcement and arrest to prevent Plaintiff from consulting counsel or reporting. Plaintiff neither knew nor, in the exercise of reasonable diligence, could have known of the nature and extent of his injuries until he escaped Defendants' control.

40. All conditions precedent to Plaintiff's claims for relief have been performed or have occurred.

## PART V — FACTUAL ALLEGATIONS

### *A. Plaintiff's Position Before 2017*

41. Plaintiff is a trained information-technology professional. Before 2017 he worked abroad as a senior SAP business-intelligence consultant, earning the equivalent of approximately $95,000 per year. He came to the United States lawfully on an H-1B visa sponsored by an employer unrelated to Defendants.

42. In 2017, Plaintiff's H-1B sponsor ran out of work for him. Under the structure of the H-1B program, that left Plaintiff with a narrow window in which to secure a new sponsoring employer or lose his lawful status.

### *B. The October 2017 Promise and the Written Employment Contract*

43. In or about October 2017, Soma Tata promised Plaintiff that he would transfer Plaintiff's H-1B visa to his company and employ him lawfully with proper payroll, income-tax withholding, Social Security contributions, and workers' compensation coverage. A written employment contract memorialized those promises.

44. Plaintiff accepted in reliance on those promises and began performing labor for Soma and the Tata Entities in or about December 2017, at the Raceway Location.

45. The promised H-1B transfer petition was never filed. Soma never initiated the transfer, never engaged counsel to do so on Plaintiff's behalf, and never told

Plaintiff that the transfer had not occurred. Instead, when Plaintiff asked, Soma represented that the matter was being handled.

46. In or about March 2018, Soma took $2,800 from Plaintiff for purported "visa processing." The money was never refunded. Soma thereafter treated the $2,800 as a debt Plaintiff owed him by working off in multiple locations.

47. It appears that Defendant Soma used the payment not for the promised H-1B transfer petition but rather for an H-2B temporary worker sponsorship which was legally not permissible given Plaintiff's year-round labor for all the entities involved. When the H-2B failed, Defendant Soma required Plaintiff to change status to an F-1 student visa through Lee College in Baytown, Texas, which was eventually denied by USCIS.

### *C. The Store Locations at Which Plaintiff Performed Labor*

48. Plaintiff performed labor at three store locations owned, operated, or controlled by Soma Tata, individually or together with others. At Soma's direction, Plaintiff's labor moved from one location to the next.

49. From approximately December 2017 through December 2018, Plaintiff performed labor at the Raceway Location, 3108 Palmer Highway, Texas City, Galveston County, Texas 77590. On information and belief, Soma Tata, Defendant Lakhani, and Defendant Waliyani held the Raceway Location under a lease from Raceway, and operated the store through Defendant LTW Group, Inc., which did business at that location under the retailer name "Raceway #6768." Lakhani was Soma Tata's business partner at the Raceway Location. Soma took Plaintiff's $2,800 "visa processing" payment and his passport in or about March 2018, while Plaintiff was working at the Raceway Location.

50. From approximately December 2018 through November 2019, Plaintiff performed labor at the Tri-Stop Location, 1800 Massey Tompkins Road, Baytown, Harris County, Texas 77521. On information and belief, Soma Tata leased the Tri-Stop Location from Defendant Roshan Aly Satani, Defendant Satani Rehana LLC, Defendant Texan Triangle, LLC, or some combination of them, and operated the store through Defendant Aadi, Inc. On information and belief, law enforcement had closed the Tri-Stop Location in connection with illegal gaming machine operations and was leased to Soma Tata. Plaintiff's April 2019 attempt to travel to India, which failed because Soma held his passport, occurred while Plaintiff was working at the Tri-Stop Location.

51. From approximately November 2019 through July 8, 2023, Plaintiff performed labor at the DJ Food Mart Location, an Exxon-branded gas station and convenience store at 7317 State Highway 61 (also identified as 7313 Texas Highway 61), Hankamer, Chambers County, Texas 77560. Defendant Aadit Fuels has owned the real property at the DJ Food Mart Location since on or

about November 1, 2018. Plaintiff performed the majority of his labor at the DJ Food Mart Location, and the May 2022 check episode and the July 2023 retaliation described below occurred during that period.

52. On information and belief, during the same period Soma Tata also owned or controlled additional gas-station and convenience-store locations, including Super Stop (Shell), 5003 N. Main Street, Baytown, Harris County, Texas 77521, for which Defendant A2S Petrotech, LLC has held the Texas sales-tax permit since March 1, 2014; Falcon Grocery (Citgo-Conoco), 406 S. Ross Sterling Avenue, Anahuac, Chambers County, Texas 77514, operated by Defendant Aadi Fuels LLC; Chevron Anahuac / Alligator Express, 139 S. Ross Sterling Avenue, Anahuac, Chambers County, Texas 77514, operated by Defendant Aadit Petrotech LLC.

### *D. Seizure of Plaintiff's Passport and Threat of Immigration Enforcement*

53. In or about March 2018, Soma took Plaintiff's passport, telling him it was "for safekeeping" while his immigration status was processed.

54. Soma retained the passport for approximately three years and nine months until approximately December 2021. Plaintiff's passport expired in November 2019. Soma continued to hold it for approximately twenty-five months after its expiration.

55. Plaintiff requested the return of his passport on multiple occasions. Soma refused to return it.

56. During the period Soma held the passport, Plaintiff could not travel, could not readily access government services that require identity documentation, and could not leave. In or about April 2019, Plaintiff attempted to arrange travel to India. He could not go, because Soma held his passport.

57. Soma repeatedly invoked Plaintiff's immigration status. He threatened to have Plaintiff reported to immigration authorities, or arrested, if Plaintiff complained about his conditions or attempted to leave.

### *E. Cash Underpayment and the Absence of Any Payroll Record*

58. Throughout the employment, Soma paid Plaintiff in cash at a rate of approximately $10 to $13 per hour. There was no payroll record, no income-tax withholding, no Social Security contribution, no workers' compensation coverage, and no information return of any kind notwithstanding the express written promises to the contrary.

59. Soma required Plaintiff to work approximately ten to twelve hours per day, seven days per week (later six), fifty-two weeks per year, with no holidays, no vacation, and no sick leave.

60. Plaintiff's contemporaneous records reflect over 2000 hours of uncompensated overtime. Soma approved Plaintiff's timesheets contemporaneously by WhatsApp message.

61. The cash structure was not incidental. It served two purposes for Soma: it avoided the reporting obligations that would have created an independent record of the employment relationship, and it left Plaintiff without documentary proof of his own work — a condition that itself deepened his dependence.

62. When Plaintiff asked about overtime, a raise, or time off, Soma refused. Soma reminded Plaintiff that "[i]f I promise something … I can break my promise."

### *F. Coerced Participation in Unlawful Activity*

63. Soma directed Plaintiff to participate in unlawful activity conducted through the stores, including the underreporting of cash receipts; the handling and tracking of cash from gaming machines; the arrangement of supplier payments in a manner Plaintiff understood to be improper; and the preparation and gathering of documents in connection with a federal benefits program inspection.

64. After directing Plaintiff to participate in unlawful activity, Soma told Plaintiff that his participation was itself a crime and Soma could report him for participating in such crimes.

65. Soma intimidated Plaintiff on multiple occasions to prevent him from reporting any of the store activity to any government agency.

66. Plaintiff pleads this conduct for one purpose: it is evidence of the coercion that is an element of his forced-labor and trafficking claims, and it is a category of harm for which § 1595 provides a remedy. Each such directive gave Soma additional leverage to hold Plaintiff in place.

### *G. The May 2022 Medical Emergency, the Engineered Check, and the Arrest Threat*

67. In May 2022, Plaintiff's wife suffered a serious pregnancy emergency and was seen in the emergency room twice. Plaintiff asked Soma for leave to care for her. Soma refused.

68. The resulting hospital bill exceeded $5,000. Plaintiff was unable to make such payments due to suppressed wages for many years.

69. Soma issued and handed Plaintiff a business check from DJ Food Mart/Aadi Fuels, dated May 14, 2022 and directed Plaintiff to present it to the hospital as proof of his ability to pay. Immediately after providing that check to the hospital, Soma canceled the check.

70. Soma kept a photograph of this transaction. Later, while Plaintiff and his family were in another state for his wife's treatment, Soma threatened that if Plaintiff did not return to work immediately, Soma would report him for "check fraud" and have him arrested.

71. Plaintiff returned. The pregnancy was horrifically lost.

### *H. Escape and Retaliation*

72. Plaintiff left Soma's employ on or about July 8, 2023.

73. On July 10, 2023, at 10:29 a.m., Soma emailed Plaintiff. Soma asked for the store's camera password and asked why Plaintiff was not answering his calls. The email said nothing about missing money, missing keys, or changed passwords.

74. Six days after leaving, on or about July 14, 2023, Mahesh Tata published a Facebook post falsely stating that Plaintiff had "looted $500,000 and keys" from the store. The post named Plaintiff and used his photograph.

75. The post was circulated to Plaintiff's former classmates and, through relatives, to his mother and sister in India.

76. Soma separately threatened Plaintiff that if he did not return, Soma would report that Plaintiff had stolen $500,000 and have him imprisoned.

77. The accusation was false. Plaintiff took nothing.

78. Plaintiff was not the only person with keys to the DJ Food Mart Location. A person who lives on the store property, the store's manager, and another worker each held keys, and that worker worked two full shifts at the store on Sunday, July 9, 2023, the day after Plaintiff left. The store continued to operate without interruption.

79. DJ Food Mart used a daily cash-reconciliation system, maintained in Excel reports stored on OneDrive to which Soma had full access, in which each shift counted and logged its opening and closing cash by denomination. Those records reflect no cash shortfall after Plaintiff left.

80. The retaliation had two objects. The first was to compel Plaintiff's return to work. The second was to destroy his credibility and to discredit any report he had made or might make about the conditions under which he had worked to ensure that if he told anyone what had happened, he would be heard as a thief explaining himself rather than as a victim. Both objects are within the scope of the trafficking venture pleaded here, and the harm flowing from the retaliation is actual damage caused by that venture.

### *I. The Federal Trafficking Determination*

81. On January 9, 2023, the United States Department of Homeland Security approved Plaintiff's application for T nonimmigrant status.

82. T nonimmigrant status is reserved by statute for victims of a severe form of trafficking in persons who satisfy the statute's other requirements, including compliance with any reasonable request for assistance in the investigation or prosecution of acts of trafficking or qualification for a statutory exception to that requirement. See 8 U.S.C. § 1101(a)(15)(T).

83. The federal agency charged with adjudicating trafficking applications reviewed the same course of conduct pleaded in this Complaint and granted that relief.

### *J. Injury*

84. Plaintiff is under the care of a licensed professional counselor and has been documented as suffering post-traumatic stress arising from the conduct alleged herein.

85. Plaintiff's earning capacity was destroyed. He entered the relationship as an SAP business-intelligence consultant earning the equivalent of approximately $95,000 per year. Approximately six years of unrecorded convenience-store labor left a void in his professional record that cannot be explained to an employer without disclosing the trafficking. He is today earning approximately $31,200 per year.

86. Plaintiff has suffered, and continues to suffer: lost and suppressed compensation; lost earning capacity; mental anguish and emotional distress; loss of liberty of movement; humiliation; and damage to his personal and professional reputation.

## PART VI — CAUSES OF ACTION

## COUNT ONE — FORCED LABOR

*18 U.S.C. § 1589(a); Civil Remedy, 18 U.S.C. § 1595(a)*
*(Against Defendant Soma Tata)*

87. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

88. Section 1589(a) makes it unlawful to knowingly provide or obtain the labor or services of a person by any one or more of the following means: (1) force, threats of force, physical restraint, or threats of physical restraint; (2) serious harm or threats of serious harm; (3) abuse or threatened abuse of law or legal process; or (4) any scheme, plan, or pattern intended to cause the person to believe that,

if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint.

89. Soma knowingly obtained Plaintiff's labor and services by means of serious harm and threats of serious harm, within the meaning of § 1589(a)(2) and as defined by § 1589(c)(2), including threats of loss of immigration status, threats of deportation, threats of arrest, threats of criminal accusation, and the financial and reputational harm that would follow from each.

90. Soma knowingly obtained Plaintiff's labor and services by means of abuse and threatened abuse of law and legal process, within the meaning of § 1589(a)(3) and as defined by § 1589(c)(1), including:

(a) threatening to report Plaintiff to immigration authorities for a status lapse that Soma himself caused by failing to file the promised transfer petition;

(b) threatening to have Plaintiff arrested if he complained or left;

(c) engineering the appearance of a bad-check offense, preserving the evidence of it, and threatening to report Plaintiff for "check fraud" unless he returned to work; and

(d) directing Plaintiff into unlawful store activity and then threatening to report his participation in it.

91. Soma knowingly obtained Plaintiff's labor and services by means of a scheme, plan, and pattern intended to cause him to believe that if he did not perform such labor he would suffer serious harm, within the meaning of § 1589(a)(4). The components of that scheme are pleaded in Part V and include the false promise of lawful employment, the seizure and retention of his passport, the cash-only payment structure, the unrefunded $2,800, the repeated invocation of his immigration status, and the coerced participation in unlawful activity.

92. Plaintiff in fact believed, and a reasonable person of the same background and in the same circumstances would have believed, that he would suffer serious harm if he ceased performing labor for Soma.

93. Under 18 U.S.C. § 1595(a), Plaintiff may recover damages and reasonable attorney's fees. He seeks actual damages, punitive damages, and attorney's fees and costs.

## COUNT TWO — FORCED LABOR: BENEFICIARY LIABILITY

*18 U.S.C. § 1589(b); Civil Remedy, 18 U.S.C. § 1595(a)*
*(Against All Defendants)*

94. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

95. Section 1589(b) reaches whoever knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a), knowing or in reckless disregard of the fact that the venture has engaged in such conduct.

96. Section 1595(a) independently extends civil liability to whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value, from participation in a venture that the person knew or should have known has engaged in an act in violation of Chapter 77 of Title 18. Liability under § 1595(a) reaches entities as well as individuals, without regard to corporate form. See 1 U.S.C. § 1.

97. The venture alleged here is the group of Texas gas-station and convenience-store businesses owned and controlled by Soma Tata, together with Soma, Mahesh, and Anuradha, operating as an integrated enterprise, which, as to the Raceway Location and the Tri-Stop Location during the periods Plaintiff worked there, also included Defendants Lakhani, Waliyani, LTW Group, Inc., Raceway, Roshan Aly Satani, Satani Rehana LLC, Texan Triangle, LLC, and Aadi, Inc., each of which associated with Soma Tata in operating the store at that location.

98. Each Defendant knowingly benefited from participation in that venture. Plaintiff's labor was performed at and for the benefit of multiple store locations. Each entity received the value of ten-to-twelve-hour days, seven days per week, at $10 to $13 per hour in cash, with no payroll tax, no withholding, no workers' compensation premium, and no overtime — labor for which no entity paid its fair value.

99. On information and belief, Defendants Roshan Aly Satani, Satani Rehana LLC, Texan Triangle, LLC, and Raceway, knowingly benefited from participation in the venture by leasing their premises to, and receiving rent from, store operations staffed through the forced labor alleged herein.

100. Each Defendant knew, acted in reckless disregard of the fact, or should have known that the venture obtained Plaintiff's labor by the means described in § 1589(a). The conditions were open and obvious to anyone within the enterprise: a full-time worker paid in cash with no records, whose passport was held by the owner, who was never permitted a day off, and who was openly threatened with immigration consequences.

101. Mahesh knew of the venture's conduct. Within six days after Plaintiff left, Mahesh publicly accused Plaintiff of the same $500,000 theft that Soma was using to threaten Plaintiff with imprisonment unless he returned to work. Mahesh's publication served the venture's two objectives: compelling Plaintiff's

return and discrediting any report Plaintiff might make about the conditions under which he had worked.

102. On information and belief, Anuradha, as Soma's wife, knew or should have known that Plaintiff, a member of her husband's family, worked full time in her husband's store businesses, was paid in cash, and was not permitted days off.

103. Each of Defendants Lakhani, Waliyani, Roshan Aly Satani, Satani Rehana LLC, Texan Triangle, LLC, and any premise owner knew or should have known of the conduct alleged herein through, among other things, presence at the store where Plaintiff worked, observation of Plaintiff's hours and cash pay, knowledge that Soma Tata held Plaintiff's passport, and communications with Soma Tata or with Plaintiff.

104. Plaintiff seeks actual damages, punitive damages, and attorney's fees and costs under 18 U.S.C. § 1595(a).

## COUNT THREE — TRAFFICKING WITH RESPECT TO FORCED LABOR

*18 U.S.C. § 1590(a); Civil Remedy, 18 U.S.C. § 1595(a)*
*(Against Defendant Soma Tata)*

105. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

106. Section 1590(a) makes it unlawful to knowingly recruit, harbor, transport, provide, or obtain by any means any person for labor or services in violation of Chapter 77 of Title 18.

107. Soma knowingly recruited Plaintiff for labor by promising a lawful H-1B transfer and lawful employment that he did not intend to and did not provide.

108. Soma knowingly harbored and obtained Plaintiff for labor by taking and retaining his passport, by paying him outside any lawful payroll system, and by moving his labor among the store locations of the enterprise at Soma's direction.

109. That recruitment, harboring, and obtaining was for labor in violation of 18 U.S.C. § 1589, as pleaded in Counts One and Two.

110. Plaintiff seeks actual damages, punitive damages, and attorney's fees and costs under 18 U.S.C. § 1595(a).

## COUNT FOUR — UNLAWFUL CONDUCT WITH RESPECT TO DOCUMENTS

*18 U.S.C. § 1592(a); Civil Remedy, 18 U.S.C. § 1595(a)*
*(Against Defendant Soma Tata)*

111. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

112. Section 1592(a) makes it unlawful to knowingly destroy, conceal, remove, confiscate, or possess any actual or purported passport or other immigration document, or any other actual or purported government identification document, of another person (1) in the course of a violation of, among other provisions, § 1589 or § 1590; (2) with intent to violate, among other provisions, § 1589 or § 1590; or (3) to prevent or restrict, or to attempt to prevent or restrict, without lawful authority, the person's liberty to move or travel, in order to maintain the labor or services of that person, when the person is or has been a victim of a severe form of trafficking in persons.

113. Soma knowingly confiscated and possessed Plaintiff's passport beginning in or about March 2018 and retained it until in or about December 2021 — a period of approximately forty-five months, including approximately twenty-five months after the document had expired.

114. Soma did so in the course of, and with intent to further, the violation of § 1589 pleaded in Count One, and to prevent and restrict Plaintiff's liberty to move and travel in order to maintain his labor and services. Plaintiff is a victim of a severe form of trafficking in persons, as reflected in the approval of his T nonimmigrant status.

115. Soma had no lawful authority to hold Plaintiff's passport. Plaintiff requested its return. Soma refused. The stated justification — "safekeeping" pending immigration processing — was false, both because no immigration processing was occurring and because an expired passport has no safekeeping value.

116. The restriction was effective. Plaintiff was unable to travel to India in April 2019 because Soma held his passport.

117. Plaintiff seeks actual damages, punitive damages, and attorney's fees and costs under 18 U.S.C. § 1595(a).

## COUNT FIVE — CONSPIRACY AND ATTEMPT

*18 U.S.C. § 1594(a)–(b); Civil Remedy, 18 U.S.C. § 1595(a)*
*(Against Defendants Soma Tata, Mahesh Tata, and Anuradha Arcot Chelvaraj)*

118. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

119. Section 1594(b) provides that whoever conspires with another to violate § 1589, § 1590, or § 1592 shall be punished in the same manner as a completed violation.

120. Section 1594(a) provides that whoever attempts to violate § 1589 or § 1590 shall be punishable in the same manner as a completed violation. After Plaintiff left on or about July 8, 2023, Soma attempted to obtain Plaintiff's further labor by threatening to report that Plaintiff had stolen $500,000 and to have him imprisoned unless he returned to work. That conduct constitutes an attempted violation of § 1589(a).

121. Soma, Mahesh, and Anuradha agreed among themselves to obtain and to continue obtaining Plaintiff's labor by the coercive means pleaded in Counts One through Four, and to conceal that conduct.

122. Overt acts in furtherance of the conspiracy include: the direction of Plaintiff's labor across multiple store locations without separate compensation; the maintenance of a cash payment structure that generated no records; the retention of Plaintiff's passport; the coordinated threats regarding Plaintiff's immigration status and arrest; and the coordinated retaliatory campaign following Plaintiff's escape, including Mahesh's July 14, 2023 publication and Soma's contemporaneous threat to report a $500,000 theft.

123. Plaintiff seeks actual damages, punitive damages, and attorney's fees and costs under 18 U.S.C. § 1595(a).

## COUNT SIX — TEXAS LABOR TRAFFICKING

*Tex. Civ. Prac. & Rem. Code Chapter 98*
*(Against All Defendants)*

124. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

125. Section 98.002(a) provides that a defendant who engages in the trafficking of persons, or who intentionally or knowingly benefits from participating in a venture that traffics another person, is liable to the person trafficked for damages arising from the trafficking of that person by the defendant or the venture.

126. Section 98.001 defines "trafficking of persons" as conduct constituting an offense under Chapter 20A of the Texas Penal Code, which includes knowingly trafficking another person with the intent that the trafficked person engage in forced labor or services.

127. Soma engaged in the trafficking of Plaintiff within the meaning of Chapter 98. Each remaining Defendant intentionally or knowingly benefited from participating in the venture that trafficked him.

128. Section 98.002(b) provides that it is not a defense that a defendant has been acquitted, has not been prosecuted or convicted under Chapter 20A of the Penal Code, or has been convicted of a different offense.

129. Section 98.003(a) provides that a prevailing claimant shall be awarded actual damages — expressly including damages for mental anguish even if an injury other than mental anguish is not shown — together with court costs and reasonable attorney's fees. Section 98.003(b) provides that a prevailing claimant may additionally recover exemplary damages.

130. Section 98.005 provides that a person found liable under Chapter 98 or other law for any amount of damages arising from the trafficking is jointly liable with any other defendant for the entire amount of damages arising from the trafficking.

131. Section 98.0025 provides that a shareholder or member of a liable entity is jointly and severally liable with that entity where the claimant demonstrates that the shareholder or member caused the entity to be used for the purpose of trafficking and did traffic that person for the shareholder's or member's direct personal benefit. Soma Tata caused each of the Tata Entities to be used for that purpose and obtained Plaintiff's labor for his own direct personal benefit.

132. Section 98.006 directs that Chapter 98 be liberally construed and applied to promote its underlying purpose of protecting persons from human trafficking and providing adequate remedies to victims.

133. Plaintiff asserts this Count as to conduct occurring within the limitations period prescribed by Tex. Civ. Prac. & Rem. Code § 16.0045, and seeks under 18 U.S.C. § 1595 his recovery for conduct falling outside that period.

134. Plaintiff seeks actual damages including mental anguish, exemplary damages, court costs, and reasonable attorney's fees under Chapter 98.

## COUNT SEVEN — BREACH OF CONTRACT

*(Against Defendant Soma Tata and the Tata Entities)*

135. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

136. In or about October 2017, Soma Tata, individually and on behalf of the Tata Entities (including Defendant Aadit Petrotech LLC), entered into a written employment agreement with Plaintiff. The agreement memorialized promises of lawful employment with proper payroll, income-tax withholding, Social Security contributions, and workers' compensation coverage.

137. Plaintiff is a party to, or the intended third-party beneficiary of, that agreement.

138. Plaintiff fully performed. He rendered the labor called for, and more.

139. Defendants breached the agreement continuously throughout the employment relationship and through its termination on or about July 8, 2023, by failing to place Plaintiff on any payroll, failing to withhold income tax, failing to make Social Security contributions, failing to provide workers' compensation coverage, and failing to pay the compensation promised. Plaintiff pleads these as continuing breaches and asserts this Count as to breaches occurring within the four-year limitations period of Tex. Civ. Prac. & Rem. Code § 16.004, and as to earlier breaches to the extent tolled as pleaded in Part IV.

140. As a direct and proximate result, Plaintiff suffered damages within the jurisdictional limits of this Court.

141. Plaintiff seeks his actual damages and reasonable attorney's fees under Tex. Civ. Prac. & Rem. Code § 38.001 et seq.

142. All conditions precedent have been performed or have occurred.

## COUNT EIGHT — FRAUD AND FRAUDULENT INDUCEMENT

*(Against Defendant Soma Tata)*

143. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

144. Soma made material misrepresentations to Plaintiff, including:

(a) that he would transfer Plaintiff's H-1B visa to his company;

(b) that he would employ Plaintiff lawfully, with proper payroll, income-tax withholding, Social Security contributions, and workers' compensation coverage;

(c) that the $2,800 taken in March 2018 would be applied to "H2-B visa processing"; and

(d) that Plaintiff's passport was being taken "for safekeeping" while his immigration status was processed.

145. Each representation was false when made. No transfer petition was ever filed. No payroll was ever established.

146. Soma knew the representations were false when he made them, or made them recklessly without knowledge of their truth, and made them with the intent that Plaintiff rely upon them.

147. Plaintiff justifiably relied on the representations. He was a family member in immigration distress who had no independent means of verifying the status of a petition Soma had told him was being handled — particularly after Soma took possession of the document that would have permitted independent verification.

148. As a direct and proximate result, Plaintiff suffered damages including the loss of his lawful immigration status, the $2,800 payment, approximately six years of suppressed compensation, and the destruction of his earning capacity.

149. Plaintiff pleads the discovery rule and fraudulent concealment as set forth in Part IV.

150. Plaintiff seeks actual damages, consequential damages, and exemplary damages.

## COUNT NINE — QUANTUM MERUIT AND UNJUST ENRICHMENT

*(Pleaded in the Alternative — Against All Defendants)*

151. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

152. To the extent the labor Plaintiff performed — for Soma individually and for the several Tata Entities that were not parties to the October 2017 agreement — is not governed by an enforceable express contract, Plaintiff pleads in the alternative for the reasonable value of that labor.

153. Plaintiff rendered valuable services to Defendants. Defendants accepted, used, and enjoyed those services. Plaintiff rendered them under circumstances that reasonably notified Defendants that he expected to be paid their reasonable value. He was not.

154. Independently, Defendants were unjustly enriched. They obtained the benefit of Plaintiff's labor through fraud, duress, and the taking of undue advantage. Texas law requires restitution of a benefit obtained by such means.

155. The measure of recovery is the reasonable value of the labor Defendants received and did not pay for.

## COUNT TEN — SINGLE BUSINESS ENTERPRISE, ALTER EGO, AND VICE-PRINCIPAL LIABILITY

*(Against All Defendants)*

156. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

157. The Tata Entities shared common ownership, common control, common management and personnel, commingled funds, common business purpose, and integrated operations. They held themselves out as a single operation and used a common workforce, including Plaintiff, without regard to entity lines. Plaintiff pleads single business enterprise in the alternative to alter-ego and veil-piercing liability.

158. Soma Tata used the Tata Entities as a mere conduit for his own affairs, disregarded their separate existence, and used them to perpetrate the conduct alleged herein for his own direct personal benefit. Adherence to the fiction of separate corporate existence would, under these facts, promote injustice and protect fraud.

159. On information and belief, Soma Tata is a corporate officer, member, or manager of each Tata Entity, a person with authority to employ, direct, and discharge its employees, a person engaged in the performance of its nondelegable duties, and a person to whom management of all or part of its business was delegated. He is therefore a vice-principal, and his acts and omissions are the acts and omissions of each entity.

160. The acts of Soma, Mahesh, and Anuradha are imputed to the Tata Entities, and the acts of the Tata Entities are imputed to Soma, Mahesh, and Anuradha, as the facts warrant.

## COUNT ELEVEN — NEGLIGENCE

*(Against All Defendants)*

161. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

162. Soma Tata and the Tata Entities that employed Plaintiff owed him a duty to use ordinary care in providing a reasonably safe workplace at the

Raceway, Tri-Stop, and DJ Food Mart Locations, including adequate staffing, adequate security, and working conditions that did not expose him to an unreasonable risk of injury. The Premises Owner Defendants, as owners or occupiers of the premises on which Plaintiff worked, owed Plaintiff a duty to exercise ordinary care to keep those premises in a reasonably safe condition.

163. None of the Defendants that employed Plaintiff provided workers' compensation insurance coverage for him. Those Defendants are nonsubscribers under the Texas Workers' Compensation Act and, under Tex. Lab. Code § 406.033(a), may not defend on the grounds that Plaintiff was contributorily negligent, that he assumed the risk of injury, or that his injury was caused by the negligence of a fellow employee.

164. Defendants breached those duties by, among other things, requiring Plaintiff to work ten to twelve hours per day, seven days per week (later six), with no rest days, holidays, or sick leave.

165. Those breaches proximately caused Plaintiff's injuries.

166. Defendants failed to provide a safe working environment, leading to Plaintiff's injury and mental distress.

## COUNT TWELVE — GROSS NEGLIGENCE

*(Against All Defendants)*

167. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

168. Defendants owed Plaintiff the duties described in Count Eleven.

169. Defendants breached those duties.

170. The conduct of the Defendants involved an extreme degree of risk considering the probability and magnitude of potential harm, and Defendants were actually, subjectively aware of the risk involved, but nevertheless proceeded with a conscious indifference to the rights, safety, and welfare of others, including the Plaintiff;

171. The Defendants' acts and omissions, which collectively and severally constituted gross negligence, were the proximate cause of the injuries and damages suffered by Plaintiff;

172. The extreme risk and harm posed by the Defendants' actions, including labor trafficking, were known to them yet ignored.

173. Plaintiff seeks exemplary damages under Texas Civil Practice & Remedies Code § 41.003(a)(3) because Defendants acted with gross negligence and malice in the operation and management of the Tata Entities.

**COUNT THIRTEEN — EXEMPLARY AND PUNITIVE DAMAGES**

*(Against All Defendants)*

174. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

175. Punitive damages are available under 18 U.S.C. § 1595 for conduct that is willful, malicious, or in reckless disregard of the victim's rights. The conduct alleged here was intentional, sustained over approximately six years, and directed at a family member whose trust was the instrument of the exploitation.

176. Exemplary damages are available under Tex. Civ. Prac. & Rem. Code § 98.003(b) and § 41.003, the latter on a showing of fraud, malice, or gross negligence by clear and convincing evidence.

177. The statutory cap of Tex. Civ. Prac. & Rem. Code § 41.008(b) does not apply. Section 41.008(c) removes the cap where a plaintiff seeks exemplary damages based on conduct described as a felony under, among other provisions, Chapter 20A of the Texas Penal Code (trafficking of persons), where the conduct was committed knowingly or intentionally. The conduct alleged here was committed knowingly and intentionally.

**COUNT FOURTEEN — PRINCIPAL – AGENT LIABILITY – PIERCING THE CORPORATE VEIL**

*(Against All Defendants)*

178. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

179. The separate existence of each Tata Entity should be disregarded, and Soma Tata held liable for its obligations, because the entity form was used as a sham to perpetrate a fraud.

180. Each Defendant was organized and operated as a mere tool or business conduit of Soma Tata ("alter ego").

181. The entity form was used to circumvent a statute.

182. The entity form was used to protect against the discovery of a crime or to justify a wrong.

183. Soma Tata caused each Tata Entity to be used for the purpose of perpetrating, and did perpetrate, an actual fraud on Plaintiff primarily for Soma Tata's direct personal benefit, within the meaning of Tex. Bus. Orgs. Code §§ 21.223(b) and 101.002.

184. Soma Tata used each Tata entity as means to commingle any personal, business, tax, or gambling proceeds including any store cash. And made payments of personal expenses from store funds and/or transfer of store assets or permits among the entities.

## COUNT FIFTEEN — PRINCIPAL – AGENT LIABILITY – VICE PRINCIPAL

*(Against the Tata Entities)*

185. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

186. Soma Tata committed the torts and statutory violations alleged herein;

187. Defendants Aadit Fuels, Inc., Aadit Petrotech LLC, A2S Petrotech, LLC, Aadi, Inc., LTW Group, Inc., Aadi Fuels LLC, and Aadit Investment Inc, are business entities;

188. On information and belief, Soma Tata is a corporate officer, member, or manager of each such entity, a person with authority to employ, direct, and discharge its employees, a person engaged in the performance of its nondelegable or absolute duties, or a person to whom it delegated the management of all or part of its business; and

189. Soma Tata's acts and omissions were directly related to, and committed in the course of, each such entity's business.

## COUNT SIXTEEN — ATTORNEY'S FEES

*(Against All Defendants)*

190. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

191. Plaintiff seeks his reasonable and necessary attorney's fees under 18 U.S.C. § 1595(a); Tex. Civ. Prac. & Rem. Code § 98.003(a)(3), which makes such an award mandatory for a prevailing claimant; and Tex. Civ. Prac. & Rem. Code § 38.001 et seq.

192. It has become necessary for Plaintiff to employ the legal services of Edwards Sutarwalla Samani LLP to prosecute this action. Plaintiff seeks recovery of his reasonable and necessary attorney's fees from all Defendants, including fees conditioned upon appeal.

193. Plaintiff designates the undersigned attorneys as his experts to testify as to reasonable and necessary attorney's fees, and also designates any other counsel associated with the undersigned firm who may be handling this suit at the time of trial as his expert on that issue.

## PART VII - PLAINTIFF'S STATEMENT OF DISAFFIRMANCE

194. Between approximately December 2017 and July 8, 2023, Plaintiff worked for the Tata Entities at stores managed by Defendant Soma Tata. During that employment, Plaintiff was coerced into entering agreements regarding the terms of his employment, duties performed, and any purported waivers or limitations on his legal rights, including rights related to workers' compensation, grievance procedures, or any other policies that would limit his ability to bring claims for personal injuries sustained during his employment or due to the actions of Defendants or their agents.

195. Throughout his employment, Plaintiff was under significant duress, coercion, and manipulation by Defendants, leaving him without the capacity to consent to any agreements that might deprive him of his right to adjudicate his claims in a court of law before a judge and jury. Plaintiff therefore unconditionally disaffirms any and all such agreements or understandings, whether formal or informal, that may have been imposed upon him by the Defendants, other than the promises of lawful employment and compensation that Plaintiff seeks to enforce in Count Seven. Any agreement purporting to waive, before his injury, Plaintiff's causes of action against a nonsubscribing employer is also void and unenforceable under Tex. Lab. Code § 406.033(e).

196. This disaffirmance is made with full insistence on his unimpaired constitutional and common law rights to have a trial by jury in this lawsuit, including claims for punitive damages. Plaintiff asserts this disaffirmance to protect his legal rights fully.

## PART VIII — PRESERVATION OF EVIDENCE

197. Plaintiff demands that all Defendants preserve all documents and electronically stored information relevant to these claims, including all WhatsApp, text message, and email communications with or concerning Plaintiff; payroll, tax, bank, deposit, and supplier records; gaming-machine records; point-of-sale and cash-reconciliation records; store scheduling and timekeeping records; surveillance footage; the October 2017 employment contract; all leases, rent records, and communications concerning the Raceway, Tri-Stop, and DJ Food Mart Locations; DJ Food Mart's daily cash-reconciliation reports and associated OneDrive files; camera-system access logs; all policies of insurance issued to any Defendant, including commercial general liability, employment practices liability, umbrella or excess, and

occupational accident or employer's liability policies; corporate formation, ownership, and governance records for each Tata Entity and for Aadya Fuels, Inc.; the July 2023 Facebook publications and all associated account data; and all metadata associated with the foregoing.

198. The duty to preserve is triggered. Any failure to preserve may result in sanctions and adverse-inference instructions under Federal Rule of Civil Procedure 37(e).

## PART IX — JURY DEMAND

199. Plaintiff demands a trial by jury on all issues so triable, pursuant to Federal Rule of Civil Procedure 38(b).

## PART X — PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff JOHN DOE respectfully prays that Defendants be cited to appear and answer, and that upon final trial the Court enter judgment in his favor and against Defendants, jointly and severally, awarding:

(a) Actual damages under 18 U.S.C. § 1595, including unpaid and suppressed compensation, lost earning capacity, and mental anguish and emotional distress;

(b) Actual damages under Tex. Civ. Prac. & Rem. Code § 98.003(a), including damages for mental anguish;

(c) Punitive damages under 18 U.S.C. § 1595 and exemplary damages under Tex. Civ. Prac. & Rem. Code §§ 98.003(b) and 41.003, uncapped pursuant to § 41.008(c);

(d) Damages for breach of contract, fraud and fraudulent inducement, negligence, gross negligence, and premises liability, and, in the alternative, quantum meruit and unjust enrichment;

(e) A declaration that no purported debt of Plaintiff to any Defendant — including the claimed "visa" debt — is valid or enforceable;

(f) An order requiring the return of any identity or immigration document of Plaintiff's remaining in any Defendant's possession;

(g) Prejudgment and post-judgment interest at the maximum rates allowed by law;

(h) Reasonable and necessary attorney's fees and costs of court under 18 U.S.C. § 1595(a), Tex. Civ. Prac. & Rem. Code § 98.003(a)(3), and Tex. Civ. Prac. & Rem. Code § 38.001 et seq., including conditional appellate fees;

(i) Joint and several liability against all Defendants pursuant to 18 U.S.C. § 1595, Tex. Civ. Prac. & Rem. Code §§ 98.0025 and 98.005, and Texas alter-ego, veil-piercing, and vice-principal principles and, in the alternative, single-business-enterprise principles; and

(j) Such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

Date: September 16, 2026

**Respectfully submitted,**

**EDWARDS SUTARWALLA SAMANI LLP**



Murtaza F. Sutarwalla
State Bar No. 24056398
Fed. Id. No. 2589991
**Attorney in Charge**

**Of Counsel**
George Edwards III
State Bar No. 24055438
Fed. Id. No. 1031248
Zeshaan Samani
State Bar No. 24083783
Fed. Id. No. 3908130
Mansoor Broachwala
Illinois State Bar No. 6326633
Fed. Id. No. 3943228

602 Sawyer St., Suite 110
Houston, Texas 77007
Office: 713-565-1353
Fax: 713-583-8715
Email: murtaza@esslawpartners.com
Email: george@esslawpartners.com
Email: zeshaan@esslawpartners.com
Email: mansoor@esslawpartners.com

**ATTORNEYS FOR PLAINTIFF JOHN DOE**